**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**SARA ADKINS,**

>    **Plaintiff,**

**v.**                                                                **Civil Action No. 2:12-cv-07500**

**CAROLYN W. COLVIN, Commissioner
Social Security Administration,**

>    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), Defendant's Brief in Support of the Defendant's Decision (ECF No. 11) and Plaintiff's Response to Brief in Support of the Defendant's Decision (ECF No. 13).

Claimant, Sara Mae Adkins, filed her application for DIB and SSI on May 24, 2010.  Claimant alleges a disability onset date of May 30, 2010, six days following her application date.  On May 30, 2010, Claimant quit her job as a live-in caregiver asserting that she could no longer lift over 100 pounds.  The claim was denied initially and upon

1

reconsideration. Claimant's request was filed and a hearing was held before Administrative Law Judge Thomas W. Springer on August 22, 2011. Per Claimant's request to supplement the record with requested doctor's records, the ALJ held the record open for 10 days to allow submission of additional relevant records (Tr. at 61-62). A decision denying her claims was issued on September 14, 2011.

Claimant filed a request for review by the Appeals Council. The Appeals Council notified Claimant on October 10, 2012, that her request for review was denied. The Appeals Council reviewed supplemental medical records from Thomas Memorial Hospital dated May 31, 2012 – June 6, 2012, Saint Francis Hospital dated May 21, 2012 and Charleston Area Medical Center dated April 11, 2012 – January 4, 2012.[1] The Appeals Council noted that the ALJ decided Plaintiff's case on September 14, 2011. The new medical records pertain to a period of time after the ALJ's September 14, 2011, decision. The Appeals Council returned the new information to Claimant stating that the supplemental information was about a time after the ALJ's September 14, 2011, decision, therefore, "it does not affect the decision about whether you were disabled beginning on or before September 14, 2011" (Tr. at 2). The Appeals Council notified Plaintiff that if she wanted to be considered for disability after September 14, 2011, Plaintiff would need to apply again (Tr. at 1-4).

On November 8, 2012, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g) (ECF Nos. 1, 2). Plaintiff's Brief in Support of Judgment on the Pleadings was filed on February 28, 2013 (ECF No. 10). Defendant's Brief in Support of the Defendant's Decision was filed on

---

[1] Dates are listed as they appear in the Appeal's Council's October 10, 2012, letter (Tr. at 1-4).

April 1, 2013 (ECF No. 11).  Plaintiff's Response to Brief in Support of the Defendant's Decision was filed on April 11, 2013 (ECF No. 13).

Under 42 U.S.C. § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.   20 C.F.R. §§ 404.1520, 416.920 (2012).   If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id*. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.   *Id*. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id*. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.   *Id*. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.   *Id*.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.   *Id*. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's

age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2012).

The Commissioner must show two things: (1) that the claimant, considering claimant's

age, education, work experience, skills and physical shortcomings, has the capacity to

perform an alternative job and (2) that this specific job exists in the national economy.

*McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first

inquiry because she has not engaged in substantial gainful activity since the alleged

onset date of May 30, 2010 (Tr. at 16).  Under the second inquiry, the ALJ found that

Claimant suffers from the severe impairments of degenerative disc disease, peripheral

neuropathy, psoriasis, affective disorder with adjustment and anxiety traits and

borderline intellectual functioning (Tr. at 17).  At the third inquiry, the ALJ concluded

that Claimant's impairments do not meet or equal the level of severity of any listing in

20 C.F.R. 404 Subpart P, Appendix 1 (Tr. at 14).  The ALJ then found that Claimant has

a residual functional capacity (RFC) for light work, reduced by nonexertional

limitations[2] (Tr. at 15-16).  As a result, Claimant cannot return to her past relevant work

(Tr. at 20).  The ALJ concluded that Claimant could perform jobs such as sorter and

folder (Tr. at 21).  On this basis, benefits were denied (Tr. at 22).

---

[2] Claimant is able to occasionally lift up to ten pounds and frequently lift less than ten pounds.  Claimant can occasionally stand, walk and sit for six hours, frequently balance, stoop, kneel, crouch and occasionally climb ramps and stairs and crawl.  Claimant is precluded from climbing ropes, ladders or scaffolds; occasionally using the lower extremities for pushing or pulling, as with the operation of foot controls.  She must avoid more than occasional exposure to extreme temperatures of hot and cold, wetness and humidity, and concentrated exposure to extreme vibrations, fumes, odors, dusts, gases, poor ventilation and hazards.  She should be limited to simple, routine and repetitive tasks, with few, if any, work place changes, does not require writing, is performed in an environment free of fast paced production, allows the individual to be off task up to 10% of the day, in addition to regularly scheduled breaks and involves oral instructions. *See* Tr. at 20.

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on September 22, 1970 (Tr. at 76).  Claimant graduated from high school.  She completed specialized training in Home Health Care in May 2010 (Tr. at 199).  Claimant worked as in-home caregiver for the Boone County Community Organization from September 20, 1990, to May 30, 2010 (Tr. at 181).  Claimant contacted the Social Security Administration on May 24, 2010, to set up a telephone appointment to file a claim for DIB and SSI.  Subsequent to Claimant's contact on May

24, 2010, to file via telephone for DIB and SSI, the Social Security Administration spoke with Claimant on June 7, 2010, via telephone (Tr. at 146-147).  Claimant's application summary states that she became unable to work "because of [her] disabling condition on May 30, 2010" (Tr. at 146).  Claimant reported that her "disability began on May 30, 2010" (Tr. at 148).

The Medical Record

The Court has reviewed all evidence of record and will discuss it further below.

Claimant asserts a history of hip joint and back pain.  On January 27, 2004, Claimant was seen at Boone Memorial Hospital's Emergency Room for acute lower back pain due to overuse (Tr. at 251-252).  On March 17, 2009, Claimant was seen by Alum Creek Medical Center for complaints of pain in her left hip.  Alum Creek Medical Center's records show that Claimant weighed 290 pounds and stood at 5'5 ½" (Tr. at 376).  Thomas J. Zekan, M.D., reviewed Mountaineer Imaging's impression of Claimant's hip joint and found nonspecific arthritic changes (Tr. at 308).  On January 14, 2010, Dr. Zekan reviewed Claimant's ultrasound performed by Mountaineer Imaging.  Dr. Zekan found Claimant's thyroid to be normal.  In the areas of palpable abnormality in the neck, no discreet cystic or solid lesion was demonstrated (Tr. at 309).  Mild loss of disc space was reported at L1-2 and L2-3.  Dr. Zekan reported Claimant's SI joints were unremarkable and pelvic calcifications were noted.   Arthritic changes were noted (Tr. at 306).  Dr. Zekan examined Claimant on June 1, 2010, and made a comparison of Claimant's impressions from January 14, 2010.  Mild loss of disc space was seen at every level.  "Osteophyte formation and facet hypertrophic changes" were seen "throughout" (Tr. at 307).  "The SI joints [were] unremarkable." (*Id.*)

P. David Ratcliff, JR., D.O., with Mountaineer Imaging examined Claimant on April 23, 2010. Dr. Ratcliff reviewed Axial CT images of Claimant's neck and compared the images to a prior ultrasound from January 14, 2010 (Tr. at 305). Dr. Ratcliff reported there was no soft tissue mass and the osseous structures were intact. Dr. Ratcliff also noted a few nonspecific lymph nodes along the right side of the neck. (*Id.*)

After Claimant filed for disability benefits on May 24, 2010, but before Claimant's alleged onset date of May 30, 2010, Alum Creek Medical Center records dated May 26, 2010, report that Claimant complained of her neck feeling swollen. After ordering a CT of the neck on May 6, 2010, the Alum Creek Medical Center records received a letter regarding the CT. Records on May 26, 2010, report that nothing was seen on the CT of Claimant's neck (Tr. at 323). Claimant complained of ear pressure and stated that she was taking over the counter sinus medicine. Claimant was advised to continue on the sinus medication. Claimant reported that she falls due to numbness and is "filing for disability for SSI." Claimant reported that standing causes back pain and numbness in legs. *(Id.)*

Dr. Zekan examined Claimant on June 1, 2010, and reported some loss of disc space was seen mildly at every vertebral level. Dr. Zekan noted "no spondylolisthesis or spondylolysis. The SI joints are unremarkable" (Tr. at 377). Claimant complained of the flu and reported numbness and pain in her lower back, hips and legs at Alum Creek Medical Center, Inc. on September 7, 2010 (Tr. at 322).

On July 23, 2010, an Adult Mental Profile was conducted for the West Virginia Disability Determination Service. Lester Sargent, M.A., conducted the consultative mental status examination. Mr. Sargent noted that claimant stood 5'6" tall and weighed 270 lbs. Claimant possesses a driver's license and drove approximately 20 miles to the

interview (Tr. at 260).  Claimant's Chief Complaint was reported as: "The claimant is applying for benefits because, 'My lower back hurts. I have arthritis.  I stay numb from my lower back to my feet.  I have a lot of pain if I stand very long.  My muscles get real stiff and I can't walk.  I have diabetes and high blood pressure.  I have been depressed and anxious since the client I care for 27 years died in May'" (Tr. at 261).  Claimant reported an onset date of May 2010.  Claimant was last employed in May 2010 as a home health care provider.  She served the same patient for 27 years until the patient died in May 2010. (*Id.*)  Claimant reported development of emotional and behavioral symptoms "in response to deteriorating health and her inability to maintain employment since the patient she worked with for 27 years passed away in May 2010." (*Id.*)  Mr. Sargent noted that Claimant reported "a history of academic deficits and special education placement in school."  (*Id.*)  Claimant reported that she was in special education classes throughout school and completed the 12th grade (Tr. at 262).

The Adult Mental Profile reported that Claimant worked as a home health care provider.   This was her only employment experience.  Claimant was administered a Cognitive Functioning test.  Claimant's results included the following composite scores, a verbal comprehension of 76; perceptional reasoning of 79; working memory of 77; processing speed of 76; and, a full scale score of 72. (*Id.*)   Claimant's Achievement Functioning scores were 75 in word reading, 74 in spelling and 80 in math computation (Tr. at 263).  Under the Mental Status Examination, Mr. Sargeant observed Claimant displayed proper hygiene, was adequately groomed, cooperated during the evaluation, spoke coherently, presented sadness and mild anxiety, processed thoughts understandably and presented no evidence of delusions. (*Id.*) Claimant's immediate and remote memories were normal and her recent memory was mildly deficient.  Claimant's

persistence was normal. Her pace was mildly slow and her concentration was mildly deficient (Tr. at 263-264).  Mr. Sargeant diagnosed Claimant with adjustment disorder, with mixed anxiety and depressed mood, borderline intellectual functioning and lower back pain, bilateral lower extremity pain, diabetes, arthritis, history of muscle spasms, stiffness in lower extremities, cirrhosis and hypertension (Tr. at 264).

Social Functioning under the Adult Mental Profile was self-reported by Claimant. Claimant goes to the store approximately 2 times a month, she talks on the telephone daily, she keeps medical appointments and occasionally attends church.  She remains in contact with several friends.  She manages her own finances but does not maintain a checking account.  Claimant receives food stamps and occasionally receives financial assistance from her friend.  (*Id.*)  As for Daily Activities, Claimant wakes up by 1:00 p.m. She performs all basic self-care duties without assistance and performs household chores including cooking, laundry, dishes and sweeping.  Claimant reported to taking a break due to fatigue and pain every 5 to 10 minutes.  Her daily routine begins with straightening up the house.  Claimant showers daily, eats dinner around 6:00 p.m., watches television and goes to bed around 4:00 a.m.  The Adult Mental Profile reported Claimant's prognosis as poor and stated that Claimant appears capable of managing her funds should an award be made (Tr. at 265).

On August 30, 2010, Alfredo C. Velasquez, M.D., conducted a consultative physical examination for the West Virginia Disability Determination Service (Tr. at 268-270).  Claimant alleged experiencing low back pain radiating to both hips and legs for the last 5 to 10 years (Tr. at 268).  Claimant reported working in-home healthcare for 20 years on and off and last working on May 30, 2010.  (*Id.*)  Dr. Velasquez reported that Claimant was fully developed, conscious, coherent and cooperative (Tr. at 269).

Claimant's neurological exam was normal (Tr. at 270).  Strength in Claimant's upper extremities, handgrip and fine manipulation showed normal.  Her lumbar area presented a slight tenderness at the lumbosacral junction.  Claimant's hip forward flexion was 100 degrees, left and right.  Her hip flexion and extension was 150 degrees, left and right without any pain.  Flexion and extension is 70 degrees with pain in the lumbar area.  Lateral flexion is 20 degrees, left and right.  Straight leg raises were 80 degrees, left and right both in sitting and supine with slight pain in the lumbar area. (*Id.*)  In summary, Dr. Velasquez stated Claimant has chronic lumbosacral pain and is obese.  Dr. Velasquez diagnosed Claimant with chronic lumbosacral muscle strain, type 2 diabetes mellitus, hypertension and psoriasis on the right leg.

Rabah Boukhemis, M.D., performed a Physical Residual Functional Capacity Assessment of Claimant on September 20, 2010 (Tr. at 274-281).  Dr. Boukhemis reported Claimant's exertional limitations to include occasionally lift/or carry 20 lbs, frequently lift and/or carry 10 lbs, stand and/or walk with normal breaks for a total of about 6 hours in an 8 hour workday, sit with normal breaks for a total of about 6 hours in an 8 hour workday and push and/or pull without limits (Tr. at 275).  Dr. Boukhemis noted Claimant's complaints of lower back and hip pain and opined that Claimant was partially credible (Tr. at 281).

On September 24, 2010, Holly Cloonan, Ph.D., performed a Psychiatric Review of Claimant (Tr. at 283).  Dr. Cloonan determined that Claimant presents adjustment disorder with mixed anxiety and depressed mood (Tr. at 286). Dr. Cloonan commented that "Claimant appears credible" (Tr. at 295).  Dr. Cloonan also performed a Mental Residual Functional Capacity Assessment of Claimant on September 24, 2010 (Tr. 298 –

300).   Dr. Cloonan's assessment stated that Claimant "is able to learn and perform routine, repetitive work-like activities" (Tr. at 300).

On December 12, 2010, Claimant sought treatment from Kuruvilla John, M.D., Board Certified Neurology, Neurophysiology and Vascular Neurology. Claimant reported experiencing constipation, pain during urination, difficulty starting to urinate, joint swelling, joint pains, morning stiffness, headaches, weakness, numbness of the legs, confusion, memory loss, depression, anxiety, change in thought process, sleep disturbances, unusual stress, falling, tiredness and skin or hair changes (Tr. at 385). Claimant reported previous illnesses to include diabetes, hypertension, depression and anxiety (Tr. at 386).   Dr. John reviewed x-rays of Claimant's back and reported his impression that the x-rays "showed degenerative joint disease" (Tr. at 390).

On December 20, 2010, Curtis Withrow, M.D., reviewed and affirmed Dr. Boukhemis' Physical Review of Functional Capacity assessment of September 20, 2010 (Tr. at 381).   On January 3, 2011, Frank Roman, Ed.D., reviewed and affirmed Dr. Cloonan's assessment on September 24, 2010 (Tr. at 383).   Ravindra Gogineni, M.D., saw Claimant on January 4, 2011, at Thomas Memorial Hospital due to complaints of ear pain (Tr. at 446).   Dr. Gogineni reviewed a contrast CT scan of Claimant's neck. Claimant's sinuses were clear and her laryngeal structures appeared unremarkable as vascular structures.   There was no gross lymphadenopathy.   Mild enlargement of the thyroid gland was noted.

Mathew Ranson, M.D., at The Center for Pain Relief, evaluated Claimant on January 10, 2011.   Claimant's chief complaint was of pain in her right shoulder, lower back and bilateral lower extremeties (Tr. at 428).   Claimant did not report the onset of her pain relating to any known injury or trauma.   She reported that her previous job

11

required heavy lifting of patients.  Claimant reported to Dr. Ranson that her pain is constant and has increased in intensity since its onset approximately 15 years ago.  Dr. Ranson reviewed Claimant's CT of Claimant's lumbosacral spine and noted some mild loss of disk space throughout the lumbar spine.  A review of a CT of Claimant's neck revealed only a few non specific lymph nodes.  (*Id.*)  Upon physical examination, Dr. Ranson reported a generalized rash consistent with psoriasis.

Motor strength testing of Claimant's lower extremities revealed good strength equaling 5 out of 5 bilaterally.  Palpation of Claimant's lower lumbar spine did reveal a significant tenderness primarily over the right lower lumbar facet joints (Tr. at 429). Dr. Ranson's impressions included lumbar spondylosis without myelopathy, lumbar degenerative disk disease and lumbar radiculopathy.

On April 5, 2011, Dr. Ranson administered Corticosteroid injections into L3-L4 facet joint bilateral, L4-L5 bilateral and L5-S1 bilateral (Tr. at 436).  Claimant was scheduled for a second injection on April 19, 2011, but she did not have the injection because she asserted the first injection did not help.  At a follow up visit with Dr. Ranson's office, Claimant asserts that her pain is constant in the lower back, however, the nurse noted Claimant stated her back pain was a 2 on a scale of 1 to 10 (Tr. at 438). Claimant reported that she was not currently taking any narcotics or over the counter pain meds.  (*Id.*)

Scott Smith, M.D., with Alum Creek Medical Center, completed a Diabetes Mellitus RFC Questionnaire on May 23, 2011 (Tr. at 419-426).  Dr. Smith[3] is Claimant's treating physician (Tr. at 261).  Claimant's Diagnosis/Prognosis included diabetes mellitus, lumbar pain, pelvic mass abdominal pain and arthritis (Tr. at 420).  On the

---

[3] Dr. Smith had been treating Claimant since 1988 (Tr. at 354).

Diabetes Mellitus RFC Questionaire, Clinical findings listed were range of motion, severe psoriasis, obesity, abdominal distention, lumbar and cervical neck pain on palpation.  (*Id.*)  Dr. Smith reported on the Diabetes Millitus Residual Functional Capacity that Claimant is "unable to work due to pain and social anxiety and would not be competitive as she must lay down often, change positions frequently and has poor ability to concentrate or listen.  (*Id.*)

Dr. Smith completed a Residual Functional Capacity (RFC) on May 23, 2011 (Tr. at 424-426).  Under the RFC category for Understanding and Memory, Claimant was found extremely limited in the ability to remember work-like procedures and the ability to understand and remember detailed instruction (Tr. at 424).  Claimant was marked as moderately limited in the ability to understand and remember very short and simple instructions.  (*Id.*)

The RFC category for sustained concentration and persistence found Claimant to be extremely limited in the ability to carry out very short and simple instructions, the ability to carry out detailed instructions, the ability to maintain attention for extended periods, the ability to sustain an ordinary routine without special supervision and the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length in the rest periods.

The Claimant was categorized under understanding and memory, to be extremely limited in the ability to remember work-like procedures and the ability to understand and remember detailed instructions.  Claimant was found moderately limited in the ability to understand and remember very short and simple instructions.

Under the sustained concentration and persistence category, Claimant was found to be extremely limited in the ability to carry out very short and simple instructions, the ability to maintain attention for extended periods, the ability to carry out detailed instructions, the ability to sustain an ordinary routine without special supervision and the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. at 424-425).  Claimant was found moderately limited in the ability to understand and remember very short and simple instructions.  Claimant was not limited in her ability to maintain regular attendance and be punctual within customary tolerances, the ability to work in coordination or proximity to others without being unduly distracted by them and the ability to make simple work-related decisions (Tr. at 424).

Under the social interaction category of Claimant's RFC completed by Dr. Smith, Claimant was found extremely limited in the ability to ask simple questions or request assistance, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

Under the adaptation category, Claimant was found extremely limited in the ability to travel in unfamiliar places or use public transportation.  Claimant was found slightly limited in the ability to respond appropriately to changes in a routine work setting.  Claimant was reported as moderately limited in her ability to set realistic goals to make plans independently of others (Tr. at 425-426).

14

Dr. John saw Claimant for an exam on July 29, 2011.  Dr. John's exam notes stated that at the L1-L2 level, no evidence of degenerative disk disease is present.  At the L2-L3 level, diffuse posterior disk bulge results in a moderate degree of central canal and bilateral foraminal stenosis.  At the L3-L4 level, diffuse posterior disk bulge with degenerative hypertrophy of the ligamentum flavum and facet joints bilaterally result in a severe degree of central canal and bilateral foraminal stenosis.  At the L4-L5 level, diffuse posterior disk bulge results in a moderate to severe degree of central canal and bilateral foraminal stenosis.  At the L5-S1 level, large right paracentral disk protrusion results in a severe degree of right-sided foraminal stenosis (Tr. at 451).  During Dr. John's exam, Claimant reported her pain assessment to be 3 out of a scale of 0 to 10, ten being the severe level of pain.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant argues that the ALJ failed to properly weigh the opinion of treating physician Dr. Scott Smith, failed to adequately assess Claimant's credibility pursuant to the requirements of 20 C.F.R. § 404.1529, § 416.929 and SSR 96-7p and  committed reversible error in not evaluating the combination of Claimant's impairments (ECF NO. 10).  The Commissioner asserts that the standard of judicial review in social security cases is extremely narrow. The Commissioner argues the ALJ reasonably gave marginal weight to the treating physician's opinion and appropriately found Claimant's allegations of disabling limitations less than fully credible. The Commissioner avers the ALJ properly considered the combined effects of Claimant's alleged impairments (ECF No. 11).

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

<u>Treating Physician Analysis</u>

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(d)(2) (2012). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence*." Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. § 404.1527(d)(2) (2012). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 404.1527(d)(2) (2012). Ultimately, it is the responsibility of the Commissioner, not the court, to review the case, make findings of fact and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine

whether the Commissioner's conclusions are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527. These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* § 404.1527(d)(2).

Claimant argues that the ALJ failed to properly weigh the opinion of Dr. Scott Smith, Claimant's primary treating physician (ECF No. 10). While the Commissioner argues in the Brief in Support of the Defendant's Decision (ECF No. 11) why Dr. Smith's opinions are not entitled to controlling weight, the ALJ's decision simply does not provide explanation from which the Court can conclude that the ALJ sufficiently weighed the evidence of record from Dr. Smith in keeping with the above mentioned regulations and case law.

Also absent from the ALJ's decision is the analysis required in the event the ALJ rejects the opinion of the treating physician. Even if the ALJ ultimately rejects the opinion of Dr. Smith, the remaining evidence of record from examining sources must be considered and weighed. It does not appear that occurred in the instant case.

In his decision, the ALJ did not state and explain the weight afforded to the opinions of evaluating physician Dr. John, examining consultative physician Dr. Velasquez, consultative physician Dr. Ranson and consultative psychologist Mr. Sargent.

The ALJ did not mention Dr. Ratcliff, Jr., or Dr. Zekan's impressions in reviewing CT images of Claimant's neck, back and hip and an ultrasound of Claimant's abdomen (Tr. 305 – 310).

The ALJ afforded some weight to the opinions of RFC assessing physicians Dr. Boukhemis and Dr. Withrow (Tr. at 25).   The ALJ also afforded some weight to the psychiatric review of Dr. Cloonan and the affirming opinion of Dr. Roman. (*Id.*) Although Dr. Smith began treating Claimant in 1988, the ALJ did not refer to Dr. Smith as Claimant's treating physician.   The ALJ afforded marginal weight to Dr. Smith's opinion that Claimant is unable to work.

Based on the above, this Court proposes that the presiding District Judge find that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly weigh the medical evidence of record and explain his findings related thereto.   In addition, the Court proposes that the presiding District Judge find that the ALJ erred in his duty to develop the record, thereby failing to comply with SSR 96-2p.

Because the Court has recommended remand based on the ALJ's inadequate treating physician analysis and explanation as to the weight afforded the treating physician pursuant to the fourth sentence of 42 U.S.C. § 405(g), this Court need not address Claimant's other arguments of credibility and the combination of Claimant's impairments.

Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge GRANT Complainant's Brief in Support of Judgment on the Pleadings, DENY the Commissioner's Brief in Support of the Defendant's Decision, REVERSE the final decision of the Commissioner and REMAND this case for further

proceedings pursuant to sentence four of 42 § U.S.C. § 405(g) because the ALJ failed to adequately explain the weight afforded Dr. Smith and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will be submitted to the Honorable Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: January 24, 2014.

Dwane L. Tinsley
United States Magistrate Judge